Good morning, Your Honors. May it please the Court, my name is Michael Tisoco, and I represent Ms. Amaya Ramos. I'd like to reserve three minutes for rebuttal. Ms. Amaya Ramos is a 47-year-old Salvadoran national. She's been in the United States for the last 26 years, during which time she's had no criminal history. She's the mother of three young United States citizen daughters, and at no time has she ever had the benefit of having any schooling, and she's illiterate in both English and Spanish. This case presents two main questions before the Court, whether or not the Court can hear Ms. Amaya's case and whether she can bring a claim, and whether or not her case represents a gross miscarriage of justice. Well, on the first issue, I'm having trouble because it seems to me that there's both an untimely and number barred, and to the extent that equitable tolling could have been an equitable tolling, so what's left? What can we do? It seems to me that we can't hear this case. Well, before the Board of Immigration Appeals, we did raise the matter of a gross miscarriage of justice so that we could... Don't talk about equitable tolling. We don't get to gross miscarriage of justice until you get through the first hurdle, isn't that right? I believe it's actually the opposite, Your Honor, because in order for Section 1252A2D to apply, there has to be a gross miscarriage of justice first, and then at that point... The way that the Court explained it in Garcia de Recon... Wait a minute. I'm concerned with jurisdiction. It seems to me that you haven't... Maybe you can persuade me, but it seems to me that this is untimely and that it is number barred. So both of those are correct, Your Honor. What we were arguing was there is a gross miscarriage of justice, and then based on... Notwithstanding. Notwithstanding, in order to get to that section of the U.S. Code, 1252A2D, which allows questions of law and constitutional claims, if there's a gross miscarriage of justice. And then based on the ineffective assistance of counsel, we were arguing that equitable tolling should apply for the same underlying reason. Well, I'm having the same concern Judge O'Scanlan has on the time and number bar issue because there's no discussion of any due diligence or efforts that were made over, what is it, about a 12-year period? It's quite a long period of time. And within Ms. Amaya's statement, she actually details everything, every step that she's gone through, as does the brief, in terms of her reliance on Mr. Salazar in the initial proceedings and then relying on Ms. Escamilla after the fact. So your argument is that's a sufficient showing that over... What is the period of time? I thought it was about 13 years. The original case started in 1996, and then there was a 1997 order. She was then encountered later in 2008, and then subsequently had separate counsel at that point. In 2010, she departed and came back and was encountered again in 2012, and that's how this proceeding started. So I guess your argument in response to my question is you think she's shown due diligence based on the contents of her affidavit. Yes, and based on the fact that given her situation of not having any schooling, not knowing the system in any way, she's relied heavily on her paid counsel to navigate her through that. I guess the question is whether that's enough. I'm looking at the facts that the Supreme Court had before it in Holland v. Florida, where a pro se inmate, who apparently was literate and seemed to be a pretty good jailhouse lawyer, was quite persistent in his efforts to contact counsel and find out what the status was of his pending habeas corpus petitions, and the Supreme Court found that that was due diligence. And I think the basic question is, has she shown enough to meet the Holland standard? I think she would, Your Honor, because she details how after, well, during her proceedings she made the efforts to maintain contact with counsel. After that, she tried to maintain contact with the same counsel, Mr. Salazar, was unsuccessful, so she turned to Ms. Escamilla, who told her there's no other options for you, but you can go speak to another attorney. So she went to go speak with two other attorneys who gave her the same advice. Relying on that, and after that, believing that Ms. Escamilla was giving competent counsel, she continued checking in with her every six months, saying, you know, what can I do? Is there anything that's going on? And throughout that time, Ms. Escamilla told her every time, just wait, there's nothing you can do. And then it kind of gets a little convoluted in the, she was advised in 2004 of eligibility for TPS benefits, which was late filed. She was not eligible for late filing because of that. Well, on that issue, in order to establish the constitutional violation and a gross miscarriage of justice, doesn't she have to show that she would not have been ordered removed absent the ineffective assistance of counsel? I believe... In which case, the fact that she is ineligible for TPS relief and is the subject of an outstanding removal order seems a pretty hard bar for her to overcome. Well, given, she, so TPS relief is just one of the two options available before her. She also is talking about the asylum case that was not properly presented, which would be another... The problem with the asylum case was that it wasn't timely raised, was it? There was no issue. There was no bar at that time. There was no one-year issue in 1997. And she had originally raised the case, I believe it was in 1993, Your Honor. But our position would be that throughout her time, she's relied on her representatives to guide her, and she had no idea what was going on in TPS. Right, but she still had... I mean, to establish gross miscarriage, she still has to show that she would have been granted relief. And the board denied the petition because she left and re-entered illegally, which renders her ineligible for TPS relief, does it not? Well, the underlying order is what renders her ineligible for TPS. For TPS, there is a provision where you can have a brief departure if it was outside of your control, which would be potentially the avenue to relief. But her entry was illegal a second time. It was. It was. But it does not... The TPS regulation doesn't mandate that if you depart and come back, that that second entry be a lawful entry. Even in the face of a prior removal order? No, no, no. So if the case were to get reopened, that underlying removal order would then no longer be the bar, which is why she's not eligible for late-filed TPS. Okay. But to answer your question regarding the gross miscarriage of justice, this Court has kind of used that standard as a cure for the most egregious of situations. That has never been a delineated kind of... Willy-nilly. And I agree, Your Honor. I mean, it really does have to be an egregious case, doesn't it? I completely agree, Your Honor. I just think that in Ms. Amaya's case, considering that she has gone over 21 years of relying on ineffective assistance of counsel through no fault of her own, she's tried to maintain contact, tried to do the best that she could in presenting her claim. And the fact that the poor counsel is the reason why that she was never able to adequately present anything. Can I go back to the very first... I certainly recognize Mr. Salazar's name, but he, as I understood it, he had sent an associate from his office. So she was represented at the merits hearing back in the 1990s, wasn't she? She was. But first of all, that attorney never entered an appearance before the court. And actually, the INS raised that issue potentially... Is that required if a law firm appears on behalf of... In other words, if Mr. Salazar enters, is it limited to Mr. Salazar or is he not permitted to send... It would be limited to Mr. Salazar because he would be the only person that would have signed that. And while he does try and enumerate all of the different people in his firm, there was never any other notice of appearance. And before the immigration courts, every attorney that enters, you can come in as primary and secondary. I mean, I would assume that in a multi-lawyer firm, it would be fairly frequent for lawyers to cover for one another when they have multiple court appearances. And on that time, oftentimes, you will do an appearance on behalf of so-and-so, but there was no... So are you saying that he didn't do that? No, he entered his appearance himself, but the other attorney never entered anything else. That's what's confusing me. So would an immigration judge permit the second lawyer to just stand up in the middle of the merits hearing and represent her without entering an appearance? No. So he did enter an appearance when he... So the secretary is a female, so she never entered an appearance. In the record, there's no evidence of that and there's... Maybe I'm confused by the facts. I thought she had a lawyer who represented her at the original merits hearing when she was ordered removed. She did. Okay. And that was somebody from Mr. Salazar's office. So are you alleging ineffective assistance from that lawyer as well? I thought your theory was that she hired Mr. Salazar and Mr. Salazar never did anything for her personally. That's true. But a lawyer from his firm did appear on her behalf at the merits hearing. Was that lawyer Barboza? Yes. Yes. And in that... What's wrong with that? That's what's confusing me. So all of the deficiencies that we note are relatable, I think, to both. We brought it up with Mr. Salazar because he's the only representative that she had. But isn't Barboza an associate of Mr. Salazar? She is. Well, I don't understand the problem. Yeah, that's my problem, too. So the point regarding the notice of appearance is one issue. Secondary to that is the ineffective assistance that both, you can argue, presented in her underlying proceeding. In fact, even in the motion to reopen that Ms. Stevens brought, the immigration judge noted that it was very conspicuous that there was no ineffective assistance counsel claim brought in that motion to reopen because, I'm assuming, in his review, it seemed inadequate. Okay. I've let you run over your time. I'm sorry. I apologize. I'll give you some time on rebuttal. Thank you. Let's hear from the government. Good morning, Your Honor. May it please the Court, Manuel Palau, for the Attorney General, the respondent in this case. As the Court has noted, the motion to reopen before the Court is indisputably time and number barred. In order to get past the time bar, she has to show equitable tolling from 1997 for a period of roughly 15 years until 2013, which I believe is when the motion was filed. As counsel mentioned, the petitioner did contact various people during that period, but there's also periods of time where she just laid low. She understood she'd been ordered removed. There was nothing that could be done about that removal order from 1997, so she chose to stay under the radar despite issuance of the order. I tell you, part of that, though, was one of the lawyers told her, well, there's nothing more I can do for you, but just keep your nose clean. In essence, don't get arrested or come to the attention of ICE. Correct. So she followed that advice. I know, but that's not diligently pursuing any claims you might have against a counsel who represented you at the deportation proceeding back in 1997. How was she supposed to know that she had a claim of ineffective assistance against Mr. Salazar or any of his associates? Well, she found out from her current counsel she has one. I understand, I assume your point, Your Honor, which is well taken, is that she's not sophisticated in the ways of the law. She did consult certain people, but the fact of the matter is, I guess, looking back, 20-20 years in hindsight, had she persisted further, she might have found someone like her on counsel sooner. And it's not clear to me that I understand. What's the basis for your assumption on that front? That she has located counsel who advised her that she may. Is it that you think she needed to do to be more diligent in that intervening period to go track down a competent lawyer, I guess, as counsel she has now, who could properly present an ineffective assistance claim? What I'm saying, Your Honor, is I'm not going that far. I am saying that there were periods of time in the relevant filing period where she understood she'd been ordered removed, was told there was nothing more she could do, and she did not pursue that matter further. My suggestion to the Court is that that period where she's not doing anything further, knowing she's been ordered removed, is not due diligence for equitable tolling. So are you arguing that the only time she actually started doing anything was when she kept coming back to the attention of ICE? Well, that certainly was the case with the counsel that filed the first motion to reopen. She was, ICE did catch up with her, so to speak. At that point, she contacted Amanda Stevens, an attorney, and that's when the first motion to reopen, that led to that. That's what motivated her retention of Ms. Stevens, based on the record. But my only point to the Court is that she's got to show equitable tolling for a substantial, approximately 15-year period. I don't think that's shown here on this record. And I believe this was addressed in the briefs, but there's no showing that she complied with matter of lozada in filing bar complaints against Ms. Stevens and Mr. Salazar. I believe she did take some lozada steps toward Ms. Stevens. There's no indication she did so with regard to Mr. Salazar or Ms. Barbosa. Turning to that point, what's missing from the gross miscarriage of justice claim here is that we don't know what transpired at the merits hearing where she was ordered deported back in 1997. That's kind of the key here, because if she had a full and fair opportunity at that hearing to present her claim through Ms. Barbosa, then there's no due process violation. I wouldn't have... That's what I was trying to explore with your opposing counsel, because she was represented and Ms. Barbosa did introduce some evidence, but it looked like it was pretty paltry. Well, I'm not sure we can draw that conclusion respectfully, Your Honor. There's no information in the motion about what transpired at that hearing. The first motion to reopen, which was denied by the judge who handled that hearing, made reference to a full evidentiary hearing. But I think in order to assess gross miscarriage of justice based on a claim of ineffective assistance, you have to look at the merits of her claim. Did she even have a passable asylum claim? And if so, was there something that happened at that hearing that was the fault of counsel, either not bringing out key elements of that claim or failing to introduce necessary evidence that caused that claim to be denied? We do know that she affirmatively filed for asylum with INS, and the notice of intent to deny that claim states that she failed... Her claim basically arose out of the Salvadoran Civil War situation. So there was a preliminary indication from INS, which is not binding on the immigration judge, that she didn't have a valid claim because it was not a kind of a protected ground and she had no past harm. But be that as it may, in order to show IAC that might qualify as gross miscarriage, we at least have to know what the prima facie elements of her claim were. And were they... If they were delivered to the immigration judge and he denied the claim, that's not even IAC. Why would that not be in her A file? That may be. The immigration court order here, ordering her deportation from 97, is a fill-in-the-blank form which says, unless this is the form indicating what the immigration judge did, if you appeal, then there would be a full decision issued. And then there was no appeal though, right? That's correct, Your Honor. So don't our cases say that we presume that someone is prejudiced when they lose the right to take an appeal altogether? That's a presumption. Yes, that's what they say. But here, you can't... You also say in NAHAD, N-E-H-A-D, that you can't assess prejudice unless you know whether the alien in question even had a plausible claim, a colorable claim. And we just don't know that here and we can't speculate that the mere failure to take an appeal in that circumstance even qualifies as an effective assistance, let alone gross miscarriage. I would point out just quickly, because the Court did mention it, that when Mr. Salazar entered his appearance before the immigration court, he, I believe, that is his signature on the appearance form, but also typed in under his signature are the names of four or five associates, including Ms. Barboza. And that's at page 334 of the record. But be that as it may, according to her own affidavit, Ms. Barboza did provide representation at the merits hearing. And I think that's the single biggest element that's missing here that precludes the Court from finding either ineffective assistance or gross miscarriage on the basis of that order. So we don't have a transcript of the hearing or any record of what exhibits were in it? It's not in this record, obviously, Your Honor. I don't know if one is available or not. It's a pretty old hearing. I don't know what the record retention policies are. But I thought everything got filed under the alien's registration number maintained by DHS. I think certainly all the documents that are generated, I've seen several A-files, and what they have are documents issued by the government relative to the alien from the beginning to the end. But I don't believe transcripts of hearings before the immigration court appear there, even if they're prepared in a normal course. Perhaps there might be audio tapes available at some point. But we're talking 1997. Because if there was no appeal, nobody may have ordered a transcription of the audio. I think that's exactly what happened, yes. Yeah. So in any event, it is not in the excerpts of record that was available to the government for this case? All I can tell you, Your Honor, is that we ordered the administrative record like we always do. Yeah. It's not in there. This is what we got, and it's not there. Well said. This is what we got. Okay. All right. Can I ask you a non-merits-related question? Yes, sir. You know, in the prior administration, we would sometimes see cases like this, and we would inquire of you all, you know, hey, is there something that you guys can do? Because this seems like an incredibly sympathetic case. I'm sort of at a loss to understand why, not you, but why the government has prioritized this particular individual for removal. Is there no prospect now that there might be some relief outside the channels of this motion of re-opening she could get? Yeah. I wouldn't say that, Your Honor. I think this case went back on the front burner because she re-entered after being reinstated. I wouldn't say she's on the front burner for removal, which is, you know, I'm being very literal here. But, yeah, I think, I do know there are options. But at this point, they pass to, if this is affirmed, it passes to DHS, ICE, and ERO, which is a branch of DHS which actually affects removals. And that's, I could make a pitch, but ultimately we're told that's their bailiwick. But I don't know how they're operating these days, what their criteria are. I know the prosecutor's discretion program is gone, but they still have discretion. That's all. So, yes, there is an avenue. I don't, that's all I can tell you. Hopefully they do look at all the surrounding circumstances here. There's no question she's been here for a significant period of time. But, you know, at my end of things, I'm just trying to defend the immigration law and statute, the actual boots on the ground. But what triggered this case, as I understand it, was her illegal reentry. Yes, well, yes, that's exactly right. She might have gone undetected for a period of time after, but she didn't. I think she was found or came to detention within a year or so after returning. Yes, that was my understanding of the record. Yes. Okay. Thank you very much. Thank you, Your Honors. Counsel, I'll give you a minute on rebuttal. I'll be quick. Thank you, Your Honor. I just would like to address a couple points that the Court rightfully brought up. Regarding diligence, as opposing mentioned with filing for TPS, I would just note that in Ms. Amaya's statement, she talks about it. The moment she became aware that there was an avenue for her, she took immediate action with both that and then also with Ms. Stevens. As the Court rightfully brought up as well, regarding a transcript, there does seem to be some confusion about that. I believe there are audio records, but I don't think that – I'm unsure if Petitioner could submit a self-serving record or transcript of those records. I suspect the government would probably tell you if you want to pay for it, you're welcome to have it, right? So that was that. And then regarding Lozada, actually, so the Court found that if an attorney has been disbarred, it's not necessary to comply with Lozada regarding him. But it isn't just Salazar, right? You're claiming ineffective assistance of counsel against Amanda Stevens? So with Ms. Stevens, we did – And Barbosa? And Barbosa? So with Ms. Stevens and Ms. Escamilla. Ms. Escamilla is a notario. No, I wasn't asking about Escamilla. It was Barbosa. With Barbosa, no. With Ms. Stevens, all three steps were complied. Lozada requires that the attorney be made aware, given an opportunity to respond, an affidavit be provided, and then a bar complaint be filed or explained why one was not filed. You're not alleging ineffective assistance as to whatever Ms. Barbosa did at the original – I would say that that would be pursuant to Mr. Salazar because he was the attorney of record in Ms. – But I thought the reason you didn't pursue Salazar was he'd been disbarred. No, no. We made a claim of ineffective assistance of counsel against Mr. Salazar, but we did not file Lozada because this court's decision said that if an attorney has been disbarred, it's futile in filing any complaint. But what about Barbosa was the lawyer who represented him or represented your client at the merits hearing? And you have to allege ineffective assistance of counsel as to what she did as well, do you not? I – knowing that he was the attorney of record available for that case, everything – But if there were errors made at the hearing, they would be attributable to her, wouldn't they? I mean, maybe there's some sort of respondeat superior liability, I don't know, for – under the Washington rules of professional conduct for – that would be attributable to Salazar, but you'd still have to complain against Barbosa, wouldn't you? I – again, I understand the court's position. I mean, if the court is taking as well the position that an entry of appearance – Well, I'm not taking a position. I'm just asking a question here. I'm just trying to figure out – well, let me ask the obvious follow-up question. Did the – was there a claim filed with the bar against Ms. Barbosa? No. Okay. All right. That's what I thought. Can I ask you a non-merits related question? Do you know the current ages of your client's children? Yes. What are they? They are 15, 9, and 5. Great. Thanks. Yes. Thank you very much. Thank you, Your Honors. Have a good morning. Thank you. The case just argued is submitted. We'll get you a decision as soon as we can.
judges: O'scannlain, Tallman, Watford